429 So.2d 24 (1983)
Charles J. MURRAY and Fumiko Murray, His Wife, Appellants,
v.
ALMADEN VINEYARDS, INC., National Distillers and Chemical Corp., and Carbo Inc., Appellees.
No. 81-2330.
District Court of Appeal of Florida, Second District.
February 4, 1983.
Rehearings Denied April 11, 1983.
Marilyn Sher, Law Offices of Neil Chonin, P.A., Coral Gables, for appellant.
Andrew D. Owens, Jr. of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellees, Almaden Vineyards, Inc. and National Distillers and Chemical Corp.
Alan H. Prather of Mann & Fay, Bradenton, for appellee, Carbo, Inc.
CURTIS, CLINTON A., Associate Judge.
On April 8, 1978, Charles J. Murray (Murray) was injured when a natural cork stopper spontaneously ejected from a bottle of previously unopened Almaden Blanc de Blanc champagne and struck him in his left eye. Murray and his wife, Fumiko, sued Almaden Vineyards, Inc. (producer-bottler) (Almaden), National Distillers and Chemical Corporation (owner of Almaden), and Carbo, Inc. (distributor) alleging strict liability in tort, negligence, and breach of implied warranty. The strict liability claim included the allegation that Almaden was legally responsible for the injury because the bottle did not contain a label warning Murray that the cork would spontaneously eject. The *25 Murrays appeal the final judgment for the defendants. The judgment was entered pursuant to a jury verdict.
In addition to denying the existence of any defect, the defendants maintained that the cork stopper did not, and could not, spontaneously eject as claimed. They contended that the incident was caused by Murray's negligent mishandling of the champagne and that there was no necessity to warn because the hazard was obvious to or was known by Murray.
After retiring from the United States Army, Murray became assistant manager of the Sarasota Yacht Club. On April 8, 1978, he was preparing to serve champagne to a party of approximately forty people. The champagne had been iced from noon until just before the 9:00 p.m. party.
Murray and the Yacht Club manager placed twelve bottles of Blanc de Blanc champagne on a rolling cart and rolled the cart into an area from which they intended to hand the bottles to the waitresses. Before serving the champagne, Murray and the manager removed the foil and wire retainer from three or four bottles including the bottle in question. As they were placing these bottles back on the cart, the cork ejected and hit Murray in his eye. Murray testified that he had never seen a cork spontaneously eject from a champagne bottle that was properly chilled and properly handled.
Almaden manufactures, produces, and bottles three champagnes  Blanc de Blanc, Extra Dry, and Le Domaine. All three are produced essentially by the same process. Extra Dry and Le Domaine are bottled in the "classic" shaped champagne bottle. The Blanc de Blanc bottle has a different exterior configuration. All of the bottles have exactly the same interior dimensions. Natural cork stoppers are used in the Blanc de Blanc and Extra Dry bottles. A plastic stopper is used in bottles of Le Domaine champagne.
In 1976 and 1977 and thereafter, Almaden placed a warning on the label of the Le Domaine and Extra Dry champagne bottles that reads:
USE CARE. SPARKLING WINES CONTAIN NATURAL HIGH PRESSURE. POINT BOTTLE AWAY FROM PEOPLE WHEN REMOVING WIRE AND STOPPER.
As of the time of the incident in question, neither the above warning nor any other warning was placed on Almaden's Blanc de Blanc champagne bottle.
The defendants admit they have experienced spontaneous ejection of the plastic stoppers but deny this same phenomena exists with natural cork stoppers. Almaden's Vice-President testified that the label warning placed on the Extra Dry bottle, with its natural cork stopper, was placed on the bottle not because of any perceived or known danger, but only to maintain a uniform appearance with the similarly shaped Le Domaine champagne bottle.
In 1980 Almaden began placing a warning label on its Blanc de Blanc champagne bottles, all of which contain a natural cork stopper. The label, printed in large letters, reads:
WARNING: THIS BOTTLE IS UNDER PRESSURE. THE STOPPER WILL EJECT SOON AFTER THE WIRE HOOD REMOVAL. TO PROTECT AGAINST INJURY TO FACE AND EYES POINT AWAY FROM SELF AND OTHERS WHEN OPENING.
Additionally, the word "CAUTION" is printed in red letters three times, and there are two additional red labels of warning on the bottom of each bottle. In all other respects the bottle, cork, and the manufacturing and bottling process of Blanc de Blanc champagne were the same as used before the Murray incident.
The Murrays offered the 1980 warning label in evidence during their case in chief, cross-examination of Almaden's Vice-President, and on rebuttal. The court, relying on the subsequent remedial exclusionary rule, section 90.407, Florida Statutes (1981), did not permit its introduction. The Murrays assert that the trial court's refusal to permit the label in evidence constitutes reversible error. We agree. The label *26 should have been admitted for impeachment purposes to allow the Murrays to attack the credibility of the testimony of Almaden's Vice-President.
Almaden's Vice-President testified on direct that the "use care" label warning which appeared on the Extra Dry champagne bottle with its natural wood cork stopper was not placed on the bottle because of any perceived danger but was placed there only for the purpose of maintaining a uniform appearance with its similarly shaped bottle of Le Domaine champagne. On cross-examination, he testified that a natural wood cork stopper would not eject unless the bottle is mishandled.
Evidence of postevent changes are traditionally admitted in negligence cases where the defendant offers evidence that a product was safe, and there was no reason to change it. E.g. American Airlines, Inc. v. United States, 418 F.2d 180 (5th Cir.1969). In Hickey v. Kansas City Southern Ry., 290 S.W.2d 58 (Mo. 1956), the defendants claimed a hazardous condition at a railroad crossing could not have been differently constructed. As impeachment, the plaintiffs proffered a photograph depicting the repaired crossing. The Missouri court said:
It is admissible "to rebut evidence or contentions .. . that the use or condition then existing could not have been improved or made safer, or that such condition was a necessary one."
... .
In view of the statement made by defendant's counsel, plaintiff should be permitted to show by any competent evidence available that the railroad could have reconstructed the crossing so as to eliminate any hazard existing by virtue of its original construction, and we think of no better way to show that fact than proof that it actually was so reconstructed.
In Hethcoat v. Chevron Oil Co., 383 So.2d 931, 933 (Fla. 1st DCA 1980), the court rejected the attempt to exclude such evidence when offered to impeach:
3. While evidence of postaccident remedial and precautionary measures undertaken and recommended by a defendant is, as a general rule, not admissible evidence as proof of the defendant's negligence in not having taken such remedial action prior to the accident, Hy-Way Heat Systems, Inc., opened the door to such evidence on rebuttal by presenting testimony of its president which had the effect of indicating to the jury that it had made no changes in its recommendations as to use of the tank subsequent to the accident.
Through the testimony of its Vice-President, Almaden attempted to prove that its natural cork stopper would not eject unless mishandled. The truth seeking process would be seriously undermined if the Murrays are denied the opportunity to impeach such testimony with the Almaden's postaccident admission that the cork "will eject" spontaneously.
Almaden argues that evidence of the postaccident label was correctly rejected because it was unfairly prejudicial within the terms of section 90.403, Florida Statutes (1981). The same contention was considered in Dollar v. Long Mfg., N.C., Inc., 561 F.2d 613 (5th Cir.1977), when the defendant's design engineer testified that, in his opinion, a backhoe was safe. The trial court excluded his postaccident letter warning of the specific hazard that caused the injury. On appeal the Fifth Circuit reversed and as to the claim of unfair prejudice stated:
In the face of Saunders' testimony as to his present opinion of the safety of the backhoe when attached to a rollbar-equipped tractor, we do not think unfair prejudice to the defendant would have resulted from his having been confronted by his own letter warning of exposure to death by such use. Of course, "unfair prejudice" as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."
561 F.2d at 618.
We do not view Almaden's postaccident admission that the cork "will eject" to be *27 "unfair" within the meaning of section 90.403.
The judgment is vacated, and the case is remanded for a new trial.
CAMPBELL, A.C.J., concurs.
SCHOONOVER, J., concurs in the result only.