463 So.2d 409 (1985)
Brenda VOYNAR, As Personal Representative of the Estate of Wesley Voynar, Deceased, Appellant,
v.
BUTLER MANUFACTURING COMPANY, a Foreign Corporation, Appellee.
No. 83-1174.
District Court of Appeal of Florida, Fourth District.
January 30, 1985.
Rehearing or Certification Denied February 28, 1985.
*411 Robert L. Donald of Pavese, Shields, Garner, Haverfield, Dalton & Cottrell, Fort Myers, and William S. Frates, II, of Frates & McCall, Palm Beach, for appellant.
Marjorie Gadarian Graham, Charles H. Damsel, Jr., of Jones & Foster, P.A., West Palm Beach, for appellee.
GUNTHER, BOBBY W., Associate Judge.
Wes Voynar, a construction worker, was fatally injured while working on the partially completed roof of a prefabricated steel building manufactured by appellee. During his fourth day on the job, Voynar stepped on an unsecured roof panel which buckled and slipped out from under him causing him to fall twenty feet to his death. Appellant, his ex-wife and mother of his son, sued appellee, the manufacturer of the prefabricated steel building, alleging causes of action in negligence and strict liability.
Appellant challenges the verdict and judgment in favor of appellee, contending the trial court erred when it excluded evidence of subsequent remedial measures and prior accidents, and when it denied a requested jury instruction. We find no reversible error.
Voynar's employer, Tri-Cities Construction, Inc., purchased from appellee the prefabricated building kit containing the Butlerrib II roof panels from which the deceased fell. The roof panels were designed to be installed with a roof slope of one-half inch in every twelve inches. Prior to being packaged in bundles, each individual panel is coated with oil by the manufacturer to prevent corrosion during shipping. This oil makes the panels slippery while they are being installed. The instruction manual furnished by the appellee not only warns of the slippery nature of the panels, but also cautions the installer to walk only on or near the support purlins, and not to step on the major corrugations because the panel can buckle. Tri-Cities' foreman warned Voynar of the dangers of slipping and buckling, and instructed him how and where to walk while the roof was under construction.
Subsequent to this accident, appellee began using an oil which evaporates upon exposure to air, and also began attaching warning flyers to each bundle of roof panels in addition to the warning in the instruction manual.
The trial court did not err in excluding evidence of these subsequent remedial measures as they related to either the negligence action or the strict liability action.
Section 90.407, Florida Statutes (1983), clearly makes such evidence inadmissible in negligence actions. It provides:
Evidence of measures taken after an event, which measures if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event.
Unlike Section 90.407, Federal Rule 407 specifically states certain exceptions which can result in the introduction of such evidence in negligence actions. Federal Rule 407
does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
Although the Florida codification of this rule of evidence does not list any exceptions, our courts recognize and permit certain exceptions for the introduction of such evidence in negligence actions. E.g., Murray v. Almaden Vineyards, Inc., 429 So.2d 24 (Fla. 2d DCA 1983); Hethcoat v. Chevron Oil Co., 383 So.2d 931 (Fla. 1st DCA 1980); accord, Pensacola Inn, Ltd. v. Tuthill, 404 So.2d 1173 (Fla. 1st DCA 1981); American Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981).
*412 The record fails to support appellant's contention that feasibility of change or any other factual questions were in controversy which would warrant the admission of evidence of subsequent changes as to the negligence cause of action. Nor was the evidence necessary for impeachment.
There is a split of authority in the various jurisdictions on the question of whether evidence of subsequent remedial measures is admissible in strict liability actions.
We are aware of Ault v. International Harvester Co., 13 Cal.3d 113, 528 P.2d 1148, 117 Cal. Rptr. 812 (1975), but prefer the reasoning of Werner v. Upjohn Co., 628 F.2d 848 (4th Cir.1980). We agree with the Fourth Circuit Court of Appeals:
The rationale behind Rule 407 is that people in general would be less likely to take subsequent remedial measures if their repairs or improvements would be used against them in a lawsuit arising out of a prior accident. By excluding this evidence defendants are encouraged to make such improvements. It is difficult to understand why this policy should apply any differently where the complaint is based on strict liability as well as negligence. From a defendant's point of view it is the fact that the evidence may be used against him which will inhibit subsequent repairs or improvement. It makes no difference to the defendant on what theory the evidence is admitted; his inclination to make subsequent improvements will be similarly repressed.
Werner v. Upjohn Co., 628 F.2d at 857.
In American Motors Corp. v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981), the court did not squarely address the issue and make an absolute statement that subsequent changes are inadmissible in strict liability cases. However, when the entire opinion is read it is apparent that that case involved both negligence and strict liability claims and the court talked in general terms of such subsequent changes being generally inadmissible in that type of case. Thus, it appears that the court accepted the practical application of the rule without expressly addressing its applicability to a strict liability action.
Another factor influencing our decision is Section 90.403, Florida Statutes, which comes into play in the question of the admissibility of subsequent changes:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence.
Strict liability requires that a manufacturer not put an unsafe product into the stream of commerce. It does not require the manufacturer to produce a foolproof product, or the safest possible product. See Clark v. Boeing Co., 395 So.2d 1226 (Fla. 3d DCA 1981). Thus, if a manufacturer permissibly chooses a "safe" product rather than a "safer" product, hindsight should not be employed to retroactively recharacterize this into a choice between a "safe" product and an "unsafe" product. Such evidence of subsequent changes would confuse and mislead the jury.
In the negligence count, the rule of exclusion clearly prohibits use of subsequent changes as a tacit admission of prior negligence. We see no justifiable reason why appellant in his strict liability action should be permitted to use the same evidence as a tacit admission that the lack of warning or the oiliness constituted a defect making the product unreasonably or inherently dangerous. In discussing the California Supreme Court's decision in Ault, the Werner court said:
The court assumes that the product is defective, and thus overlooks the situation where the product is not defective but could be made better. The manufacturer who undertakes precautionary measures in this setting will face the risk of liability for an injury caused by the earlier nondefective version of the product based on evidence of his subsequent act which made the product safer but in no way supports an inference that the *413 initial version of the product was defective.
Werner v. Upjohn Co., 628 F.2d at 857.
We believe the reasons supporting the exclusion of evidence of subsequent remedial measures or changes in cases involving negligence apply to causes of action in strict liability. We also acknowledge that the recognized exceptions are likewise applicable, but appellant failed to establish any exception that would permit the admission of subsequent changes and the trial court made no error in excluding such evidence.
The judge also properly excluded evidence of prior accidents. The proffer demonstrated that of the eight accidents sought to be introduced, only two involved the Butlerrib II panels. In both of these accidents, the panels were installed on a four in twelve slope  a slope eight times as steep as that involved here. Evidence of prior accidents is not admissible unless the proffer demonstrates they involved the use of the same type of equipment under substantially similar conditions. Lasar Manufacturing Co. v. Bachanov, 436 So.2d 236 (Fla. 3d DCA 1983).
The trial court did not commit reversible error in denying appellant's requested special jury instruction. Appellant drafted the special instruction based upon the Supreme Court's decision in Auburn Machine Works Co. v. Jones, 366 So.2d 1167 (Fla. 1979), and it read as follows:
You are instructed that:
The manufacturer of a defective product is not necessarily relieved of liability to an injured party because a defect may have been open and obvious; however, the obviousness of a defect, if any, may be considered by you as one factor in determining whether the deceased himself used that degree of reasonable care required by the circumstances.
Appellee also requested three special instructions:
A supplier of a product who knows or has reason to know that the product is likely to be dangerous in normal use has a duty to warn those who may not fully appreciate the possibility of such danger. However, there is no duty to warn of an obvious danger.
[from Cohen v. General Motors Corp., 427 So.2d 389 (Fla. 4th DCA 1983).]
A knowing misuse of a manufacturer's product creates no liability on the part of the manufacturer. Under that circumstance, the sole cause of the injury is the misuse of the product.
[from Clark v. Boeing Co., 395 So.2d 1226 (Fla. 3d DCA 1981).]
It is not itself a breach of duty to supply materials which are reasonably safe and customarily used, even though the material might conceivably be made more safe, nor must the manufacturer make his product "more" safe when the danger to be avoided is obvious to all.
[from Clark v. Boeing Co., supra.]
Of these four instructions, appellant wanted the trial court to give only her instruction and deny appellee's three instructions, or give none of them. Appellant felt the instructions were inconsistent and that it would be less prejudicial to deny all than to give any of appellee's requested instructions. The judge denied all four instructions.
The four instructions deal with related, but different legal issues and are not inconsistent. Furthermore, they are accurate statements of the law. To have given all instructions would have been the most correct course. Since the appellant requested that the trial court deny all instructions rather than give all instructions, she cannot now complain.
Even if the court had given appellant's requested instruction alone, it could not have altered the outcome of the case. Since the jury specifically found that the product was not defective, this instruction would have been inapplicable because the instruction is predicated upon the product being defective.
*414 Appellant has not demonstrated any reversible error.
AFFIRMED.
DOWNEY and GLICKSTEIN, JJ., concur.