BROWN, LUCY, Associate Judge.
Whether the trial court abused its discretion in striking four improperly listed expert witnesses is the question presented by this appeal. At issue is the trial court’s power to enforce its own pretrial order, and the meaning of:
(1) “listing” a witness;
(2) “prejudice;” and
(3) ability to “cure prejudice.”
Dawn Bailey was injured in a rear-end collision in December 1990. Suit was filed in 1991. Defendant admitted liability; the trial court, by order issued in late August 1992, set the damages trial on a jury docket starting October 26, 1992, with a Pretrial Conference to be held on October 14.
At the October 14 conference, the defense made its second motion for continuance, claiming Plaintiff had disclosed “new” witnesses. In addition, Defendants argued more time was needed to schedule examinations or “I.M.E.’s.” of Plaintiff by defense experts. At that time, the defense had dis *651 closed two expert I.M.E. doctors: Dr. Scheinberg, for a neurological I.M.E., and Dr. Bush, for a neuropsychological I.M.E.
The trial judge directed counsel to meet by October 23 to comply with the pretrial conference requirements, including furnishing all witness lists. Defendants’ motion for continuance was denied, as the court found Plaintiffs witness list properly included only witnesses previously known to the defense, or disclosed during Plaintiffs deposition. All Plaintiffs medical experts were, in fact, previously identified treating physicians. The court indicated the ease would not actually be called for trial until November 2, 1992.
On October 19, defense disclosed, for the first time, two expert witnesses, previously completely unknown to Plaintiff, specializing in fields in which Plaintiff had not obtained experts for trial. The trial court granted Plaintiffs motion to strike Dr. Hyde, a bio-mechanics expert, and Dr. Powell, a neurora-diologist.
By that time, Dr. Bush, the timely disclosed defense neuropsyehologist, had refused to conduct an I.M.E. because the trial court had granted leave for a videographer or other person to be present; the judge then granted Defendants a continuance to the beginning of the December trial docket, for the sole purpose of obtaining a different neuropsyehologist to conduct the defense neuropsychological examination of Plaintiff.
On granting this limited continuance, the trial court specified the purpose was only to allow a neuropsychological examination to be conducted by a defense expert, stating it was not “designed to start this case all over again,” reasoning that to allow the two previously stricken expert witnesses would “require the removal of the case from the trial docket and discovery to start all over again.” The court found Plaintiff had substantially complied with the pretrial order; finding, however, that Defendants “never complied with the pretrial order before. When we [had the pretrial conference] defense was not prepared to comply with it.”
The trial judge ordered the new defense neuropsyehologist be listed by November 6, and all discovery, including the deposition of the new neuropsyehologist to be completed no later than November 20. Trial was rescheduled for December 7, 1992.
Defendants filed their “Amended Witness List” on November 9, three days after the court’s deadline had elapsed, “listing” the new neuropsyehologist, Dr. Bonnie Lavine, by name only, with no address, stating she “may testify regarding Plaintiffs neurological dysfunction.” Dr. Lavine never conducted an examination of Plaintiff.
Plaintiffs counsel was unable to obtain Dr. Lavine’s address, and was therefore not able to subpoena her for a deposition. The trial court, therefore, granted Plaintiffs motion to strike this witness.
Finally, during opening statement, the trial judge struck Dr. Bush, who had been “listed” by defense counsel as a neuropsyehologist “scheduled to examine the Plaintiff and testify to his impressions and opinions.” The trial court reasoned that the defense had “effectively abandoned” Dr. Bush as a witness by later listing Dr. Bonnie Lavine as the neuropsyehologist who would be performing the defense examination of Plaintiff.
Defendants did present Dr. Scheinberg, the neurologist, as their expert I.M.E. doctor at trial. The jury returned a verdict which was reduced to a final judgment for Plaintiff in the amount of $99,100.
Defendants appealed, contending that the trial court improperly eliminated four of its five medical expert witnesses by “hypertech-nical application” of the pretrial witness disclosure requirements. A careful review of the record demonstrates, to the contrary, a proper exercise of the trial court’s discretion in enforcing its own pretrial order.
Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), squarely places decisions regarding the testimony of improperly disclosed witnesses within the broad discretion of the trial judge, who is vested with the interpretation and enforcement of any pretrial order mandating witness disclosure. Id. at 1313. Except in cases of a clear abuse of discretion prejudicial to the affected party, trial courts must be allowed to enforce pretrial orders to achieve the orderly and effi *652 cient administration of justice, fair to all parties.
In exercising its discretion to strike witnesses not properly disclosed upon pretrial order, the trial court may consider such factors as: whether use of the undisclosed witness will prejudice the objecting party; the objecting party’s ability to cure the prejudice or its independent knowledge of the witnesses’ existence; the calling party’s possible intentional noncompliance with the pretrial order; and the possible disruption of the orderly and efficient trial of the case.
Compliance with pretrial orders directing proper disclosure of witnesses eliminates surprise and prevents trial by “ambush.” Binger, 401 So.2d at 1314. Counsel who disobey a trial court order entered months earlier should not be rewarded for their conduct. Pipkin v. Hamer, 501 So.2d 1365, 1370 (Fla. 4th DCA 1987).
In the instant case, the trial judge’s chief concern was to afford the parties an opportunity for the fak, orderly and efficient preparation and trial of the lawsuit. In weighing the prejudice to the objecting party, the trial judge properly took a broad view and considered the ability of all parties to effectively and.timely prepare and present their case to the jury.
We hold that it is within the trial court’s discretion to require that a witness be timely disclosed (absent good cause for delay, and we find none here) and be “listed” in a meaningful way in compliance with the requirements of the pretrial order, so that a failure, as was evident here, to properly list a witness (e.g. omitting the address, or mis-characterizing the subject matter of the testimony) may properly be considered by the trial court as a failure to “list” the witness. Clearly any “listing” of a witness must be in substantial compliance with a pretrial order. Listing a witness by name only serves no purpose whatsoever to opposing counsel where, as here, counsel has no independent knowledge of who the witness is, or where she may be located for discovery purposes.
Defendants had listed Dr. Bush as a witness “scheduled to examine the Plaintiff and testify to his impressions and opinions.” However, Dr. Bush refused to conduct an examination. Defense counsel conceded before this court that it was, therefore, reasonable for Plaintiff to assume that Defendants would not call Dr. Bush as a witness, and not to depose him in preparation for trial. It would be plainly unfair under these circumstances to allow Dr. Bush to surprise Plaintiff at trial with undiscovered opinions, which Plaintiff, despite her compliance with the pretrial order, was unprepared to counter.
Although Defendants cite Aguila-Rojas v. City Management Group Corp., 606 So.2d 765 (Fla. 3d DCA 1992), for the proposition that the continuance of a trial obviates any prejudice in the untimely addition of a witness, that case can not be read so broadly. In Aguila-Rojas, the defendant complied with a court order resetting the trial by timely listing a witness more than 45 days prior to the trial date. The witness’s testimony was crucial to the defense, and the plaintiff was aware of the nature of the witness’s testimony. The Third District held that the trial court erred in excluding the witness, on the ground that the plaintiff would have been neither surprised nor prejudiced by allowing the witness to testify. Id. at 766.
Unlike the defendant in Aguila-Rojas, Defendant here was found by the trial court not to have'complied with the pretrial order, and the improperly disclosed witnesses were not shown to be crucial to the defense. The fact that the trial court eventually granted a limited continuance does not mandate a reversal on these facts.
Where, as here, a party without good cause improperly discloses witnesses, and by virtue of the improper disclosure gains an unfair advantage over the opposing party who is in compliance with the pretrial order, Binger gives the trial court discretion to strike those witnesses to prevent the objecting party from being forced to choose between frantic last-minute discovery and an unjustified delay of her trial. This is not a fair manner in which to “cure the prejudice” caused by the defendants’ failure to timely prepare their case, and we hold that Binger does not require such a result here.
*653 In the instant case, the trial court properly found that unfair prejudice to Plaintiff existed because she would be unable to counter testimony offered so late in the game. See Grau v. Branham, 626 So.2d 1059, 1061 (Fla. 4th DCA 1993) (“Neither side should be required to engage in frantic discovery to avoid being prejudiced by the intentional tactics of the other party.”).
Binger does not mean that trial courts are obligated to automatically grant last minute continuances to parties who choose not to timely prepare their cases for trial. The trial court’s discretion under Binger includes the power to appropriately enforce pretrial orders, as the court below did in this case. Accordingly, the Final Judgment is AFFIRMED.
GLICKSTEIN and FARMER, JJ., concur.