657 So.2d 1200 (1995)
KELLER INDUSTRIES, Appellant/Cross-Appellee,
v.
LeNora VOLK and John Volk, Jr., Appellees/Cross-Appellants.
No. 93-0754.
District Court of Appeal of Florida, Fourth District.
June 21, 1995.
Rehearing, Rehearing and Clarification Denied August 17, 1995.
*1201 Robert H. Schwartz of Gunther & Whitaker, P.A., Fort Lauderdale, for appellant/cross-appellee.
Elliot H. Scherker and Arthur J. England, Jr., of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Dianne J. Weaver of Weaver, Kuvin, Weaver & Lipton, P.A., Fort Lauderdale, for appellees/cross-appellants.
Rehearing, Rehearing En Banc and Clarification Denied August 17, 1995.
GLICKSTEIN, Judge.
This is an appeal by defendant from an adverse final judgment and from the trial court's order denying its motion for new trial. Plaintiffs cross-appeal the final judgment. We reverse and remand for new trial on the main appeal, but find no error on the cross-appeal and affirm as to it.
On October 26, 1986, Mrs. Volk was severely injured when a stepladder manufactured by defendant allegedly collapsed and closed on her lower leg, causing compound fractures of the right fibula, tibia and fibula distal end, with surgery required to reattach the broken bones. This acute injury occasioned a serious bacterial infection in the leg, compelling Mrs. Volk to employ a full-leg cast for almost three years. Mr. and Mrs. Volk sued the manufacturer on the theories of negligence and strict liability. Following a jury verdict, the trial court entered final judgment for Mrs. Volk of $1,415,176.49 and for her husband of $90,000 and denied defendant's motion for new trial. It also denied plaintiffs' motion to enter judgment without reduction for the jury's finding of ten percent comparative negligence.
Unfortunately, the case must be retried because the trial court's ruling concerning one expert witness was unduly exclusionary. We agree with appellees that the trial court's ruling pertaining to Doctor Hyde was correct. Florida Marine Enter. v. Bailey, 632 So.2d 649 (Fla. 4th DCA), rev. denied, 641 So.2d 1345 (Fla. 1994). Moreover, as to Mr. Ver Halen, we also agree that the trial court properly excluded his midtrial revelation of how the accident occurred. Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993). However, the trial court went too far in striking all of Mr. Ver Halen's testimony.
Mr. Ver Halen's deposition was first taken by appellees in March 1992. Mr. Ver Halen had no opinion as to how the accident had occurred, but testified extensively concerning his opinion that the accident could not have occurred in the manner suggested by the appellees' expert, Mr. Harrenstein. Additionally, the witness was not asked by appellees' counsel whether the stepladder complied with then governing or accepted standards. When the witness informed counsel that he had relied upon Underwriters Laboratories' (UL) "acceptance file for this product," the following exchange occurred:
Q... . Have you utilized the UL acceptance report in any fashion in coming to any opinions you're going to give us here today?
A. Yes.
Q. Let's put that aside.
Pull out all the correspondence and put it together, would you? We'll go in categories.
Trial commenced in November 1992 and, during this proceeding, the trial court allowed appellee another opportunity to depose Mr. Ver Halen. Because he had developed midtrial an opinion pertaining to the cause of the accident, the trial court completely excluded Mr. Ver Halen as a witness. Appellant then proffered the following testimony:
Q. What standards do either ANSI or UL apply to a Model 727 Keller ladder that was manufactured in October of 1976?
A. Okay. ANSI 1956 covered stepstools. Particularly, the '72 omits stepstools.

*1202 Q. You said 1956?
A. Correct.
The '72 standard omits stepstools. Within the confines of ANSI, you would have to look at the '56 standard.
And in that regard, Underwriters Laboratories continued to include stepstools in their 184 standard for portable metal ladders, and I think it was the third edition that was in effect at the time this particular product came into being, which, I think, has an effective date of something like 1970 or '71.
... .
Q. My question was, Mr. Ver Halen: Do you have an opinion as to whether the 727 stepstool that was manufactured in October of 1976 meet all applicable UL codes on the date of its manufacture?
A. It did.
Q. Further, do you have an opinion  You have expressed an opinion that the ANSI codes did not apply to stepstools in 1972.
A. The '72 version of ANSI excluded stepstools.
Q. Assume, hypothetically, that that standard applied, the 1972 ANSI standard.
A. Okay.
Q. Did this ladder also comport to that standard with reference to the spreader bars?
A. Okay. With reference to the spreader bars, yes, it did.
The lone exception where it would not meet that, ANSI at that particular time required 12-inch spacing on steps, which is a variation between stepladders, which stepstools at 9-inch spacing wouldn't met [sic]. ANSI rectified that in the '92 codes.
Q. A subsequent ANSI code bears an effective date of what, the one after 1972?
A. It became effective October of 1982.
Q. Let's assume  and I think I know from the deposition of LeNora Volk  that she purchased the ladder either in late '81 or early '82.
Was the 1982  approved-only 1982 ANSI standard applicable to this ladder either on the date of its manufacture or the date of the sale to Mrs. Volk?
A. It was not effective for the stepstools on either date, if I assume that she purchased it in early '82. The effect date was October of '82, so it would have been late '82.
Q. So my question is: In your opinion, based on your expertise, did that standard, which is a voluntary standard, have any applicability to either the manufacture or the sale date of this particular ladder, Exhibit 4?
A. No.
Q. What about the subsequent UL standard?
A. The subsequent UL standard came into effect in, I believe it was, 1980, and that would have been in effect at the time it was sold not at the time it was manufactured.
Q. In your opinion, does this ladder, Exhibit, comport with the standards in the 1980 UL code as it relates to the spreader bars?
A. Yes, it does.
Q. So, even if it were applicable to the date of sale, it nevertheless met  the ladder nevertheless comported to the standard set out in the UL standard?
A. With regard to the spreader bars?
Q. Spreader bars, yes.
In another important facet of the proffer, Mr. Ver Halen again refuted the causation theory advanced by appellees' expert and explained his reasons for rejecting their position. This proffered testimony was critical to appellant's defense and the trial court erroneously wiped it out after (1) appellees' previous failure to inquire about compliance with standards, (2) the trial court's permitting an additional deposition of Mr. Ver Halen and (3) appellees' knowledge well in advance of Mr. Ver Halen's opinion regarding their expert's testimony. All of this becomes significant in light of the fact that Mr. Ver Halen became appellant's only witness on liability.
A trial court clearly may exercise its discretion in imposing sanctions. Clarke v. Sanders, 363 So.2d 843 (Fla. 4th DCA 1978). In this case, however, the trial court, by excluding the foregoing testimony, engaged in judicial overkill. One of a party's *1203 most important due process rights is the right to call witnesses. LoBue v. Travelers Ins. Co., 388 So.2d 1349, 1351 (Fla. 4th DCA 1980), rev. denied sub nom. Burnes v. Stafford-Lobue, 397 So.2d 777 (Fla. 1981). A trial court should only exclude witnesses under the most compelling of circumstances. Id.; First Republic Corp. of America v. Hayes, 431 So.2d 624, 626 (Fla. 3d DCA), rev. denied, 441 So.2d 632 (Fla. 1983). This is particularly so when the exclusion would be of a party's most important witness. LoBue, 388 So.2d at 1351. Thus, it is critical for the trial court to exercise extreme caution when excluding a party's only witness.
It is plain from the record that the trial court here was upset because of its perception that Mr. Ver Halen had no opinion on the cause of the accident when deposed in March 1992, but after the trial began, he formulated one. Instead of prohibiting him from giving that opinion, the trial court improperly erased him from the proceedings. The trial court could have prevented any prejudice to appellees by barring testimony concerning the cause of the accident, but also could have stopped short of eviscerating appellant's defense by allowing Mr. Ver Halen to otherwise testify.
While there are instances which permit some leeway on remand, such as amendments to pleadings, the dictates of justice demand that we "freeze frame" these proceedings to the extent possible in order to prevent appellant from circumventing the decision of this court and obtaining a second bite of the apple. See Connecticut Gen. Life Ins. Co. v. Dyess, 588 So.2d 1045 (Fla. 5th DCA 1991), rev. denied, 599 So.2d 655 (Fla. 1992). Accordingly, the pleadings are to remain unchanged and upon retrial appellant may not utilize Dr. Hyde as a witness nor elicit from Mr. Ver Halen his affirmative opinion regarding causation.
Because the case must be retried, we feel it necessary to discuss the role of pre-accident, postmanufacture remedial measures. In this case, appellants' stepladder was manufactured in 1976. A new design was incorporated in 1982, but the accident did not occur until 1986.
Section 90.407, Florida Statutes (1991), provides:
90.407 Subsequent remedial measures.  Evidence of measures taken after an event, which measures if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event.
(Emphasis added). We have located no Florida case expressly ruling upon the meaning of "event" as applied to a strict liability claim where a change was made after manufacture, but before the accident. However, persuasive federal cases lead us to conclude the accident is the "event."
Section 90.407 and part of Federal Rule of Evidence 407 are almost identical.
Rule 407. Subsequent Remedial Measures

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
Fed.R.Evid. 407 (1991) (emphasis added). The Florida Legislature did not incorporate the last sentence of rule 407. However, Florida courts have engrafted this part of the federal rule onto the Florida statute. In Currie v. Palm Beach Co., 578 So.2d 760 (Fla. 4th DCA 1991), this court explained:
In a negligence action, section 90.407, Florida Statutes (1988), clearly prohibits use of evidence of subsequent remedial measures as an admission of prior negligence. Voynar v. Butler Mfg. Co., 463 So.2d 409 (Fla. 4th DCA), rev. denied, 475 So.2d 696 (Fla. 1985). There are, however, certain circumstances which justify the admission of evidence of subsequent remedial measures. For example, where one party takes the position that it was not possible to correct a certain condition before the operative event, evidence of subsequent remedial *1204 measures is admissible on the issue of the feasibility of taking precautionary measures. American Motors Corp. v. Ellis, 403 So.2d 459, 465 (Fla. 5th DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982).
Id. at 763. The Voynar court extended the application of section 90.407 and its "recognized exceptions" to strict liability cases. Because of the similarity between Florida's statute and the federal rule, we find guidance from federal cases interpreting rule 407.
In Raymond v. Raymond Corp., 938 F.2d 1518 (1st Cir.1991), involving the exclusion of a pre-accident, postmanufacture design modification, the court held:
Under 407, only measures which take place after the "event" are excluded. The term "event" refers to the accident that precipitated the suit. Roberts v. Harnischfeger Corp., 901 F.2d 42, 44 n. 1 (5th Cir. 1989); Chase v. General Motors Corp., 856 F.2d 17, 21 (4th Cir.1988).
Id. at 1523. Therefore, design changes made after manufacture, but before the accident are not "subsequent remedial measures" and do not come within the purview of section 90.407.
In the present case, the lawyers and trial court inserted section 90.407 into the case, then entered the thicket of "feasibility" contemplated by the last sentence of the federal rule. Nonetheless, before an exception may be employed, the statute that invokes it must be applicable. Here, the statute does not apply to the pre-accident design change. Thus, the feasibility exception to section 90.407 may not be utilized. Having concluded neither the rule nor the exceptions thereto apply to pre-accident redesigns, the issue remaining to be resolved is whether the design change is admissible.
The Raymond court explained that pre-accident design modifications made after the date of manufacture are relevant in determining the defectiveness of a product. Raymond, 938 F.2d at 1523-24; Chase, 856 F.2d at 21-22 (holding pre-accident, postmanufacture design changes not within the ambit of 407 and explaining they may be otherwise admissible). However, because the design change must have been feasible at the time of manufacture, if the improvement could not have been made when the product was manufactured, then the improvement is, as a matter of law, irrelevant to the issue of defectiveness.[1]Roberts, 901 F.2d at 44. In this case, the later-incorporated design change could have been implemented at the time of manufacture.[2]
We conclude that the trial court did not abuse its discretion in admitting evidence of the pre-accident, postmanufacture design change, nor in instructing the jury upon same. While there may be circumstances which require the application of section 90.403, Florida Statutes (1991),[3] the record in this case does not so require.
With respect to the cross-appeal, any error was invited by appellees/cross-appellants, *1205 whose verdict form was used by the jury. Having invited the error, they cannot now complain. Held v. Held, 617 So.2d 358, 360 (Fla. 4th DCA 1993); see also Springer v. Morris, 58 So.2d 859, 861 (Fla. 1952). Because of the necessity for a new trial, this issue should become moot upon remand.
WARNER, J., concurs.
PARIENTE, J., concurs in part and dissents in part with opinion.
PARIENTE, Judge, concurring in part, dissenting in part.
I agree with the major portion of Judge Glickstein's thoughtful opinion, especially with regard to his analysis of the admissibility of postmanufacture but pre-accident changes in design. However, I would affirm the final judgment and would not order a new trial solely because of the trial court's actions in striking the testimony of expert witness Jon B. Ver Halen.
When Jon B. Ver Halen initially testified in his deposition of March 1992, the following interchange occurred with plaintiffs' counsel concerning his opinions:
Q. Let's start out with some general questions.
Tell me what your opinions are in this matter.
A. I have to ask you, opinions with regard to what?
Ver Halen finally advised plaintiffs' counsel that one of the primary areas in which he had formulated an opinion related to the accident scenario. However, when questioned on this area the following colloquy ensued:
Q. Give me your opinion with reference to how the accident occurred?
A. I don't know.
Q. Pardon.
A. I don't know. I have no opinion at this point.
Q. None at all?
A. Well, none within a reasonable degree of engineering certainty.
There are various possibilities, but none that fit the testimony that has been given in this case.
Trial commenced in December 1992 with plaintiffs relying on the fact that Ver Halen had no opinion that he could properly render on a critical issue in the case  causation. However, on Monday, December 7, 1992, after plaintiffs had presented their case, defendant's counsel informed plaintiffs' counsel that Ver Halen may have a "different opinion." Plaintiffs were permitted to depose Ver Halen at 8:00 a.m. the next day. In that deposition Ver Halen testified that four days earlier he had formed an opinion within a reasonable degree of engineering certainty that the accident was caused by plaintiff wife's loss of balance. He testified as follows in answer to deposition questions from plaintiffs' counsel:
Q. You told me you had no opinion as to how the accident happened?
A. Yes.
Q. Have you changed that?
A. Well, I've modified it. That is to say that I neglected to point out that I don't know how the accident, in total, occurred, but the cause of the accident is an independent loss of balance on the part of Mrs. Volk.
In striking Ver Halen as a witness, the trial court found that there had been a "substantial reversal from no opinion to an opinion." The trial court further observed that there had been evasiveness on Ver Halen's part and that "much of his work was done as a surprise" to plaintiffs:
I am going to strike him. It's a clear reading as far as I can see it. He had no opinion and he was hedging. His hedging was, "possibly, maybe some day if I get something extra; might not," but he still had no opinion as to how the accident occurred. Then Friday, he was supplied material  under the Office Depot case  no notice was given of the materials supplied, and on Saturday, he miraculously now transforms a "no opinion" into a positive opinion even though he may call it a modification.
*1206 Because this case had been originally set for trial in October 1991, the fact that Ver Halen offered so little of substance during the March 1992 deposition is of even greater significance. The trial court also focused on the defense lawyer's timing in supplying his expert witness with critical depositions in the middle of trial, which depositions had been available for months before the trial commenced. The trial court properly considered our decision in Office Depot, Inc. v. Miller, 584 So.2d 587 (Fla. 4th DCA 1991) in exercising its discretion to exclude the expert testimony in toto.
The fact that Ver Halen is a very experienced and sophisticated expert witness adds further credence to the trial court's observations concerning the evasiveness of Ver Halen's deposition testimony. Ver Halen testified that "probably every major ladder manufacturer in the United States has utilized my services at some point or another" and that roughly twenty percent of his consulting work had been with Keller Industries, the defendant in this case. All of that work consisted of serving as an expert witness in connection with cases in litigation. Most assuredly he would know how to give straightforward, non-evasive answers.
While defendant argues that it was unfair to exclude Ver Halen's testimony on causation, defendant additionally argues that the actions of the trial court in excluding the proffered opinion testimony on compliance with ANSI standards and UL standards was unjustified because there was no change of opinion on this subject. My observation is that there was no change of opinion because Ver Halen never expressed any opinion on the subject  at either deposition. Because Ver Halen never expressed any opinion on compliance with ANSI and UL standards, proffered trial testimony on this same subject was properly excluded on that basis as well.
The majority opinion, by quoting an excerpt from Ver Halen's first deposition, implies that plaintiffs' counsel was to blame for any nondisclosure by Ver Halen concerning compliance with standards. The responsibility for properly disclosing expert opinion, including those concerning compliance with standards, and the penalty for evasiveness and game-playing should be placed on the party who hired the expert. Disclosure of expert opinions through interrogatories and then through deposition, as provided for in Florida Rule of Civil Procedure 1.280(b)(4)(A), requires an expert witness "to state the substance of the facts and opinions to which the expert is expected to testify." Pretrial tactics which hamper full disclosure of expert opinions should not be tolerated. We should not require the opposing side to guess at the subject matter of the opinions because of evasive responses or place the burden on the opposing attorney to pull the opinion from a recalcitrant but savvy expert witness.
If there is any doubt as to whether Ver Halen would have expressed opinions on compliance with ANSI and UL standards if plaintiffs' counsel had asked the "right" question, the midtrial December 1992 deposition is instructive. At the end of this deposition, Ver Halen was asked the following:
Q. Do you have any opinions that you didn't discuss at your first deposition or today?
A. I think we have discussed all the opinions that I have developed either in the first deposition or today.
Not until the trial court had stricken Ver Halen as an expert witness did the proffered testimony concerning his opinions on compliance with industry standards emerge.
The propriety of striking Ver Halen as a witness was an appropriate sanction especially when viewed in context of other conduct by defendant and its expert. This conduct included the belated revelation that Dr. Hyde would testify after repeated assurances that he would not be called to give an opinion,[4] *1207 the evasive responses to legitimate questions by plaintiffs' counsel during Ver Halen's deposition, the failure of Ver Halen to bring documents on which he intended to rely to his deposition and the tactical, midtrial furnishing by defendant of key depositions to Ver Halen.
In reviewing the propriety of sanctions imposed by a trial court, our supreme court has cautioned that:
[T]o justify reversal [of sanctions], it would have to be shown on appeal that the trial court clearly erred in its interpretation of the facts and the use of its judgment and not merely that the court, or another factfinder, might have made a different factual determination.
Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1983). The trial court's discretion, especially in the realm of orderly control of the pretrial and trial process, is necessary because "it is impossible to establish rules for every possible sequence of events and types of violations that may ensue in the discovery process." Id.
The most severe sanction for discovery and trial abuses  striking of pleadings or dismissal with prejudice  is reserved only for the most flagrant abuses. Mercer. In Mercer, the flagrant abuse was the failure of the defendant to timely comply with outstanding discovery and the sanction approved was the striking of the defendant's answer and entry of a default judgment. Less severe sanctions  such as prohibiting a party from utilizing a particular witness or part or all of the witness's testimony  ought to be left to the sound discretion of the trial court. The trial court enjoys the best vantage point for evaluating the conduct and its effect on the goal of a fair trial, free of ambush tactics. As observed by the supreme court in Mercer:
The exercise of discretion by a trial judge who sees the parties first-hand and is more fully informed of the situation, is essential to the just and proper application of procedural rules. In the absence of facts showing an abuse of that discretion, the trial court's decision excusing, or refusing to excuse, noncompliance with rules ... must be affirmed... . It is the duty of the trial court, and not the appellate courts, to make that determination.
443 So.2d at 945 (quoting Farish v. Lum's, Inc., 267 So.2d 325, 327-28 (Fla. 1972)).
Compliance with pretrial orders directing proper disclosure of witnesses eliminates surprise and prevents trial by ambush. Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla. 1981); Florida Marine Enters. v. Bailey, 632 So.2d 649 (Fla. 4th DCA), review denied, 641 So.2d 1345 (Fla. 1994); Grau v. Branham, 626 So.2d 1059 (Fla. 4th DCA 1993); Office Depot. Proper disclosure of expert witnesses encompasses proper characterization of the subject matter of their testimony. See Florida Marine Enters. Although striking testimony of an expert witness may appear harsh, it was within the trial court's discretion. Unless there is meaningful disclosure of opinions in a properly noticed deposition given for that purpose, there can be no true disclosure of the expert witness.[5] Our observations in Wilson v. Health Trust, Inc., 640 So.2d 93, 94 (Fla. 4th DCA 1994) are particularly relevant here:
We do observe from time to time ... maneuvering which goes on to delay the disclosure of the names of experts, the lack of cooperation in setting the depositions of the experts, and the things that occur during these depositions to obstruct full disclosure. Trial courts should exercise caution in admitting undisclosed opinion evidence when it has not been properly disclosed. Excluding the testimony will not only encourage proper disclosure, but will also be less likely to constitute the type of *1208 prejudicial error which would require a new trial. (Emphasis supplied).
In my opinion, the trial court properly exercised caution. It saw what was happening and took steps to prevent sandbagging. If defendant's defense was eviscerated, the result was a product of its own doing. It had only itself to blame. As Justice Anstead aptly observed in approving the actions of the trial court in Office Depot:
The trial court's action here sends out a strong message to those who do not adhere to the code of fair play advanced by Binger. Serious violations of the pretrial disclosure rules may result in the exclusion of important evidence, and may, in extreme circumstances, lead to the grant of a new trial.
584 So.2d at 591. I applaud the trial court's willingness to impose sanctions and do not believe it went too far. See Office Depot.
For all the above reasons, I would affirm the decision of the trial court and affirm the final judgment.
NOTES
[1] The Fifth Circuit held in Roberts that a postmanufacture, pre-accident addition of a warning device was irrelevant because the device had not been developed at the time of manufacture. The court places its reliance upon its earlier opinion in Grenada Steel Industries v. Alabama Oxygen Co., 695 F.2d 883 (5th Cir.1983), wherein the court had noted: "Alternative designs may indicate that the product was unreasonably dangerous ..., but only if they were available at the time of manufacture." We agree. Had the latermodel stepladder been impossible to manufacture at the time the subject stepladder was manufactured, it would be irrelevant. Accord Ellis v. Golconda Corp., 352 So.2d 1221 (Fla. 1st DCA 1977) (holding, before the creation of section 90.407, a pre-accident design change not relevant to defectiveness of valve where the improvement was based on technology not available at the time of manufacture), cert. denied, 365 So.2d 714 (Fla. 1978).
[2] Appellant agreed to stipulate that the "alternative design to the 327, which is on the table, which is the only one that will be demonstrated, was feasible both financially and under engineering principles at the time that its predecessor, the 727, was manufactured... ."
[3] Section 90.403, Florida Statutes (1991), provides:

90.403 Exclusion on grounds of prejudice or confusion.  Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. This section shall not be construed to mean that evidence of the existence of available third-party benefits is inadmissible.
[4] Although defendant had previously listed Dr. Hyde in its January 24, 1992 pretrial catalogue amendment and subsequent pretrial lists, counsel for defendant confirmed on several occasions that Dr. Hyde would not be called to testify. In reliance on these representations, plaintiffs' counsel did not depose Dr. Hyde. However, with the trial rescheduled to begin on November 30, 1992, on November 10, 1992 defendant's counsel suddenly advised plaintiffs' counsel that it would be calling Dr. Hyde. The trial court properly struck Dr. Hyde as a witness. The effect of defendant's prior assurances concerning Dr. Hyde was that the defendant did not "disclose" Dr. Hyde as a witness until twenty days before trial. Such last-minute maneuvering was properly sanctioned.
[5] To prevent any misunderstanding concerning the requirement of full disclosure of expert witness opinions either through interrogatories or depositions as provided for in Florida Rule of Civil Procedure 1.280(a)(4), I would urge trial courts to include in their pretrial orders explicit requirements for exchange of expert opinions, a requirement uniformly imposed by the federal courts in our jurisdiction. See Rule 16.1(K), Local Rules of the United States District Court for the Southern District of Florida.