708 So.2d 666 (1998)
David GRIEFER and Ann Griefer, his wife, as Guardians of the Person and Property of Laurel B. Griefer, an Incompetent, Appellants/Cross-Appellees,
v.
Michael Jon DiPIETRO and Myra DiPietro, a/k/a Myra Bellio, a/k/a Myra J. Chandler, a/k/a Myra LaPoint, a/k/a Myra No Last Name, a/k/a Myra, Appellees/Cross-Appellants.
Nos. 96-2481, 96-2958, 96-2964 and 97-0223.
District Court of Appeal of Florida, Fourth District.
April 8, 1998.
*668 Arthur J. England, Jr. and Joe N. Unger of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Benjamin J. Weaver, Jr. and Diane J. Weaver of Krupnick, Campbell, Malone, Roselli, Buser, Slama & Hancock, P.A., Fort Lauderdale, for appellants/cross-appellees.
Edward D. Schuster of Kessler, Massey, Catri, Holton & Kessler, P.A., Fort Lauderdale, for appellees/cross-appellants.
WARNER, Judge.
In the second trial of this personal injury action, the trial court excluded testimony of the appellants' human factors expert for a discovery violation and refused to allow the appellants' accident reconstruction expert to testify in rebuttal. We hold that the exclusion of these experts' testimonies was error and reverse again for a new trial.
In our prior opinion in Griefer v. DiPietro, 625 So.2d 1226 (Fla. 4th DCA 1993)("Griefer I"), we summarized this case as follows:
Laurel Griefer was leaving a bridal shop carrying her just-purchased wedding gown when, while crossing the street, she was struck by appellee's automobile. She suffered severe head injuries, leaving her in a coma. After she came out of the coma, her personality had changed entirely resulting in the end of her engagement, the loss of her employment, and the inability to work at a steady job.
Appellants' claim of negligence against appellee was premised on the fact that appellee did not have his lights on even though the accident happened forty-five minutes after sunset and on the claim that appellee was speeding and inattentive. Appellee claimed that Ms. Griefer was comparatively negligent in that she was holding her wedding gown bag over her head, blocking her view of the road. Appellee saw the white plastic bag blowing just a second or two before impact but did not realize there was a person behind the bag.
Id. at 1227. We reversed the first trial and remanded for a new trial on liability only because of an error in refusing to give a requested jury instruction.
During pretrial procedures at the second trial, the appellants ("the Griefers") listed Dr. Snyder, a human factors expert, as one of their witnesses. Subsequently, the appellees ("the DiPietros") propounded expert interrogatories regarding Dr. Snyder, which were concededly not answered in the time provided. On November 27, 1995, the trial court entered an ex parte order granting the Griefers ten additional days in which to answer the interrogatories. The parties had already tried to take Dr. Snyder's deposition in his home state of North Carolina, but this deposition had to be cancelled due to the illness of Dr. Snyder. Before answering the interrogatories and within the extended period, counsel for the Griefers contacted the DiPietros' counsel and agreed to make Dr. Snyder available for deposition in Florida. Unfortunately, the Griefers' counsel did not confirm in writing that the deposition would substitute for written answers to the interrogatories.
When the Griefers failed to file timely answers to the interrogatories, the DiPietros moved to strike Dr. Snyder from appearing as an expert as a sanction. During the hearing on the motion, held on December 21, 1995, twenty-one days before trial and prior to the close of discovery, the Griefers hand delivered their answers to the interrogatories to the DiPietros. Despite the fact that the interrogatories had been answered and the parties had scheduled Dr. Snyder's deposition six days later in Fort Lauderdale, the trial court entered an order granting the motion to strike Dr. Snyder "unless otherwise agreed between both parties." The DiPietros deposed Dr. Snyder as scheduled on December 27, 1995, fifteen days before trial. On January 3, 1996, the Griefers' counsel *669 wrote a letter to the DiPietros' counsel stating that he had been under the impression at the hearing on the motion to strike that their agreement to have Dr. Snyder deposed had cured any problems in having Dr. Snyder testify. Counsel also filed a motion to clarify the trial court's order striking Dr. Snyder's testimony, noting that it would be prejudicial for the court to strike Dr. Snyder from the witness list because the Griefers had provided answers to the interrogatories and the DiPietros had taken his deposition.
On January 8, 1996, twelve days after the DiPietros deposed Dr. Snyder and three days before trial, the Griefers redeposed the DiPietros' expert, Dr. Benedict, who had reviewed Dr. Snyder's deposition. Dr. Benedict, an accident reconstruction expert, stated that he had studied human factors in the course of his engineering experience and work and was knowledgeable about the field because it "was an integral part of engineering design." Throughout his career, he had analyzed hundreds of products relating to human factors issues and was able to define and explain the human factors issues involved. He had offered expert testimony on human factors issues in other cases. When asked about the human factors issues related to this case, Dr. Benedict responded that he had previously testified on those matters either at the first trial or in his previous depositions and therefore he felt competent to address those issues. During the deposition, counsel posed several human factors scenarios pertinent to the instant case, and Dr. Benedict was capable of giving opinions regarding them. When asked if he needed to conduct any additional testing to investigate or address any of Dr. Snyder's opinions, Dr. Benedict responded that he did not.
Two days before trial, when the Griefers argued the motion for clarification of the order striking Dr. Snyder, the DiPietros' counsel complained that the allowance of a new expert would prejudice him because he did not have time to obtain his own expert to counteract the testimony. In response, the Griefers pointed to Dr. Benedict's deposition testimony, noting that he was qualified to address every aspect of Dr. Snyder's testimony. While not conceding the issue, the DiPietros' counsel stated that he did not object to Dr. Snyder giving his opinions on two specific areas of evidence, namely luminosity and visuality. Without giving the Griefers the opportunity to respond and notwithstanding the DiPietros' concession, the trial court refused to permit Dr. Snyder to testify at all as a witness in the case-in-chief but extended the possibility that Dr. Snyder could be called for rebuttal. The order on clarification stated that "the prior order entered by this Court with respect to the testimony of Dr. Harry L. Snyder shall stand, however, this Order shall not preclude the Plaintiffs from calling Dr. Harry L. Snyder for rebuttal testimony."
The case went to trial as scheduled. The Griefers called several witnesses to the accident as well as Dr. William Fogerty, an accident reconstruction expert, who testified that Michael DiPietro's vehicle did not have its headlights on. He opined that more than ninety-nine percent of drivers in South Florida use their headlights one-half hour after sunset, and "from a traffic engineering point of view," there was a greater command for eyes to move to a lit source than to an unlit source. Based on his investigation, he offered opinions as to how the accident happened, including the amount of time which elapsed between the time that Laurel Griefer started across the street and the time that she was hit, the path that she traveled, Michael's reaction time to avoid the accident, and the speed of Michael's car which was estimated at between 33½ and 43 miles per hour, among others. When the Griefers' counsel asked Dr. Fogerty whether or not the "phantom vehicle," which Michael had testified to seeing pull out on the right side of the street, prevented Michael from seeing Laurel as she crossed the road, the DiPietros' counsel objected on the ground that the witness was not qualified as a human factors expert. The court sustained the objection. The question was restated and Dr. Fogerty testified, over objection, that the phantom vehicle would have caused no line of sight blockage. Thus, his testimony was based upon engineering principles, not human factors analysis.
*670 At the conclusion of the Griefers' case, their counsel proffered the substance of Dr. Snyder's testimony out of the presence of the jury. The DiPietros did not request any voir dire based on the proffered testimony.
For the defense, Dr. Benedict challenged many of Dr. Fogerty's calculations and opinions. When he was questioned during crossexamination on the visibility of the DiPietros' car without headlights, he stated that he was not a human factors expert and did not have an opinion on that basis, but testified nonetheless that "with or without the lights, you can see the car fine." In addition, he claimed that he could see the unlit car during a reenactment of the incident that he had conducted at the accident scene.
After the close of the DiPietros' case, the Griefers sought to introduce rebuttal evidence by calling both Dr. Snyder to rebut Dr. Benedict's human factors opinion testimony and Dr. Fogerty to challenge the correctness of Dr. Benedict's calculations and equations. The trial court declined, stating:
The jury has heard enough testimony. Actually they are insufferably bored by a lot of it, and I know they know the issues and the law will cover the issues; and the rest you can argue. There's enough testimony in there already.
After this rebuff, the Griefers proffered the rebuttal testimony following the retirement of the jury for deliberations.
The jury returned a verdict finding Michael DiPietro 10 percent negligent and Laurel Griefer 90 percent comparatively negligent. Five days after the verdict, the Griefers filed a motion to recuse the judge based on his purported conveyance to the jury of his disbelief and disapproval of their case through gestures, facial expressions, and admonitions to counsel. Subsequently, the Griefers filed a motion for new trial arguing that the court erred in striking Dr. Snyder as a witness in the case-in-chief and refusing to allow rebuttal testimony from Dr. Snyder and Dr. Fogerty. After the trial judge recused himself, the successor judge denied the motion for new trial. The Griefers appeal from the final judgment entered pursuant to the jury verdict.
The Griefers contend on appeal that the trial court's exclusion of the testimony of their only human factors expert constituted an abuse of discretion, while the DiPietros respond that the court's exclusionary ruling was justified because the Griefers' late compliance with the discovery order prejudiced them. A trial court's decision to impose sanctions for discovery violations involves the exercise of discretion. See Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983). In Mercer, the supreme court held that in reviewing the application of this discretionary power of the trial court the reasonableness test adopted in Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980), should apply, and the discretionary ruling of the court should be disturbed only when it fails to satisfy this test. See Mercer, 443 So.2d at 946. To justify reversal of the sanctions, the appellant must show that "the trial court clearly erred in its interpretation of the facts and the use of its judgment and not merely that the court, or another fact-finder, might have made a different factual determination." Id. Nevertheless, the severity of the sanction should be commensurate with the violation. See Miles v. Allstate Ins. Co., 564 So.2d 583, 585 (Fla. 4th DCA 1990).
Although the exclusion of a witness's testimony is a permissible sanction for a discovery violation under Florida Rule of Civil Procedure 1.380(b)(2), it is a drastic remedy which should be utilized only under the most compelling circumstances. See Acquisition Corp. of America v. American Cast Iron Pipe Co., 543 So.2d 878, 881 (Fla. 4th DCA 1989) (citations omitted). In Acquisition Corp., this court upheld the trial court's exclusion of an expert witness where the other party did not become aware of the witness's identity until one week before the trial and the content of his testimony until the day before trial. See id. By way of contrast, in Louisville Scrap Material Co. v. Petroleum Packers, Inc., 566 So.2d 277 (Fla. 2d DCA 1990), the second district found that the trial court's exclusion of a party's only expert constituted an abuse of discretion, even though the party did not produce the name of this expert before the pretrial conference, as required by the pretrial order, *671 where the other party had knowledge of the subject matter of the expert's testimony ten days before trial and deposed him four days prior to trial. The appellate court concluded that the other party was not prejudiced, despite its claimed inability to obtain a rebuttal expert, because it not only had time to depose the expert and prepare for trial concerning his testimony, but also had four of its own experts ready to testify at trial. See id. at 278.
We have reversed trials for "unduly exclusionary" rulings with respect to trial witnesses. In Keller Industries v. Volk, 657 So.2d 1200 (Fla. 4th DCA), rev. denied, 666 So.2d 146 (Fla.1995), the appellees had taken the appellant's expert's deposition eight months before trial. At the time, the expert had no opinion as to how the accident had happened; however, he also had opinions on other issues in the case. Following commencement of the trial, the court permitted the appellees to redepose the witness and they discovered that he had developed an opinion as to the cause of the accident. As a result, the court completely excluded the expert's testimony. Finding that the proffered testimony from the appellant's only witness on liability was critical to its defense, in reversing the judgment, we reasoned:
[a] trial court clearly may exercise its discretion in imposing sanctions. In this case, however, the trial court, by excluding the foregoing testimony, engaged in judicial overkill.... A trial court should only exclude witnesses under the most compelling of circumstances. This is particularly so when the exclusion would be of a party's most important witness.

Id. at 1202-03 (citations omitted)(emphasis added). To strike all of the testimony was too extreme, and we suggested that the trial court should have barred only the new opinions, not those opinions to which the expert had testified in deposition and were known to the appellees. See id. at 1203.
In light of the foregoing authority, and mindful of the standard of Canakaris, we hold that the trial court erred in excluding the testimony of Dr. Snyder. His name was timely disclosed to the defense, who received the answers to his interrogatories and took his deposition two weeks in advance of trial. Moreover, there is no evidence in this record of any prejudice to the DiPietros. Dr. Benedict was fully capable of addressing each of the opinions formed by Dr. Snyder and had done so prior to his deposition. Incredibly, even when the DiPietros conceded that Dr. Snyder could testify on at least two subjects, the trial court refused to allow the testimony. This was error.
As the supreme court stated in Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), the prejudice involving witness testimony refers to the "surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony." Id. at 1314. Given that the DiPietros were aware of the subject matter of Dr. Snyder's testimony several weeks before trial and that Dr. Benedict attested to his competency to address the human factors issues involved in the accident, the DiPietros were sufficiently prepared for trial regarding Dr. Snyder's testimony, thereby eliminating any potential prejudice caused by the Griefers' untimely response to the expert interrogatories. See Petroleum Packers, 566 So.2d at 278. As such, the sanction which the trial court imposed in excluding one of the Griefers' most important witnesses from the trial was overly severe. The court engaged in "judicial overkill," and in doing so, deprived the Griefers of their right to call an essential witness. See Keller, 657 So.2d at 1202-03.
We reject the contentions that Dr. Snyder's testimony was cumulative of other testimony offered. Moreover, we agree with the Griefers that the prejudice from the exclusion of Dr. Snyder's testimony was aggravated and compounded when Dr. Benedict was allowed to testify that a pedestrian could see the oncoming car regardless of whether it had its headlights on and to make several other observations which touched on human factors issues.
The trial court made an alternative finding that the testimony of Dr. Snyder would not assist the jury in any meaningful way. However, this finding is contrary to substantial case law permitting the admission of human factors testimony where unusual circumstances make it unlikely that the jury's common *672 experience would enable it to resolve the factual issues. See Buchman v. Seaboard Coast Line R.R. Co., 381 So.2d 229 (Fla.1980); Public Health Found. for Cancer and Blood Pressure Research, Inc. v. Cole, 352 So.2d 877 (Fla. 4th DCA 1977); Seaboard Coast Line R.R. Co. v. Kubalski, 323 So.2d 32 (Fla. 4th DCA 1975); Seaboard Coast Line R.R. Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971). In Public Health Foundation, a case involving an individual who dove off of a seawall, struck the bottom and became paralyzed, we permitted the admission of human factors testimony on the "deceptive quality of various factors that were present in the environment and the manner in which a person would react to these factors." 352 So.2d at 879. We further said:
The significance of and the reaction of a human being to these factors might reasonably involve a knowledge that was within the sphere of the witnesses' expertise and beyond the scope of the common knowledge of the jurors.
Id. Similarly, this case involves the deceptive quality of the environment surrounding the accident, and Dr. Snyder's testimony would have been useful and was admissible.
We also find that it was error to exclude both Dr. Snyder's and Dr. Fogerty's rebuttal testimonies. Although a trial court has broad discretion regarding the admissibility of rebuttal testimony, it abuses that discretion when it limits non-cumulative rebuttal that goes to the heart of the principal defense. See Mendez v. John Caddell Constr. Co., 700 So.2d 439, 440-41 (Fla. 3d DCA 1997). The Griefers' trial theory was that Michael's failure to observe Laurel as she attempted to cross the street while he drove the car without headlights constituted negligence. The DiPietros' defense was that when Laurel crossed the street outside of a crosswalk, holding her wedding dress in a manner that prevented her from seeing oncoming traffic, she negligently caused her own injuries, and that Michael was unable to avoid the accident due to the distraction of the phantom vehicle, irrespective of whether he used the car's headlights. Thus, in order to rebut the DiPietros' defense, the Griefers were required to present testimony on Michael's ability to see Laurel's ten square foot white plastic bag with either directional or peripheral vision, despite the distraction of a phantom vehicle, and the effects of Michael's failure to use the car's headlights on his ability to see Laurel and Laurel's corresponding ability to see the oncoming car. Dr. Snyder's testimony would have addressed these areas.
The exclusion of Dr. Snyder's testimony was not harmless. None of the proffered rebuttal evidence was cumulative to any other evidence presented during the Griefers' case-in-chief. In fact, the DiPietros objected when, during the Griefers case-in-chief, Dr. Fogerty was asked a question which the DiPietros identified as a human factors question.
Finally, the refusal to permit rebuttal testimony from Dr. Fogerty was error. Dr. Fogerty's rebuttal testimony would have explained and contradicted material evidence offered by Dr. Benedict, including his calculations and equations establishing the trajectory of Laurel after she was struck and the speed of the car at the time of impact. Rebuttal to challenge the calculations of a defense expert is permissible rebuttal evidence. See Zanoletti v. Norle Properties, Corp., 688 So.2d 952 (Fla. 3d DCA 1997). Indeed, as emphasized in the Griefers' brief, "this is classic, admissible and essential rebuttal testimonyindispensable for the Griefers to assist the jury in weighing the validity of the DiPietros' expert."
Because we reverse on the grounds of exclusion of the testimonies of the expert witnesses, we need not reach the other grounds for reversal. We also do not need to address the issues on cross-appeal, save one which will arise again on retrial. The DiPietros contend that the court erred in awarding prejudgment interest to the Griefers. In this case, the trial court awarded interest from September 4, 1991, the date that the jury in the first trial determined damages, which we did not reverse in Griefer I.
A party is entitled to pre-judgment interest on its "out-of-pocket, pecuniary losses" once a verdict has liquidated the damages as of a date certain. Argonaut Ins. Co. *673 v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985). Personal injury plaintiffs are generally not entitled to prejudgment interest because the damages are uncertain and are not liquidated until determined by the jury. However, in Palm Beach County School Board v. Montgomery, 641 So.2d 183, 184 (Fla. 4th DCA 1994), we held that:
[w]hen a jury returns a verdict in a personal injury case that remains undisturbed throughout future proceedings in the case, the sum so fixed should be treated exactly the same as a liquidated breach of contract claim.
In Montgomery, this meant that the successful plaintiff was entitled to prejudgment interest for the period of time between the date of the jury verdict and the entry of judgment. See id.
While the liability finding in the prior trial was overturned on appeal, the damage verdict was undisturbed. We reject the DiPietros' argument that damages are not liquidated until the jury determines the amount of comparative negligence. That is a liability issue which will not change the total amount of damages suffered by the Griefers. Regardless of how much the recovery is reduced by comparative negligence, the damages were liquidated in 1991. Not awarding interest from that date would deprive the Griefers of a substantial part of their damages, as the following explanation demonstrates.
At the prior trial, the award of future economic damages was reduced to present money value as of the date of the verdict in 1991. Present money value is the value in current dollars of a future stream of payment. But in order for that present money value to replace the future income stream, it must be invested or earn interest to provide that future amount. Thus, for the Griefers' award to compensate them today for that future income stream reduced to present money value, they must have invested it from the date of the verdict. Actually, if the 1996 jury had determined damages, past economic damages, particularly lost income, would have increased to account for the years between 1991 and 1996, and future economic damages would have been slightly less. Because we fixed damages in 1991 by refusing to reverse as to damages, without the award of prejudgment interest the Griefers would not be compensated for all of their losses.
For these reasons, we reverse for a new trial on liability only. Should the Griefers once again obtain a judgment, interest shall be calculated on the amount of the award from the date of the first verdict.
FARMER and KLEIN, JJ., concur.