DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**NOB HILL FAMILY CHIROPRACTIC**
a/k/a **MICHAEL J. COHEN, D.C., P.A.** a/a/o **KENRICK GRANT,**
Appellee.

No. 4D21-204

[September 29, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Florence Taylor Barner, Judge; L.T. Case Nos. COCE 06-016458 (54) and CACE 17-022012.

Nancy W. Gregoire of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, for appellant.

Joseph R. Dawson of Law Offices of Joseph R. Dawson, P.A., Fort Lauderdale, for appellee.

FORST, J.

Appellant State Farm Automobile Insurance Company ("Insurer") appeals the trial court's final judgment for Appellee Nob Hill Chiropractic a/k/a Michael Cohen, D.C., P.A. ("Provider"), in an action concerning personal injury protection ("PIP") benefits. On appeal, Insurer contends that the trial court erred in three respects: (1) excluding one of its expert witnesses pursuant to the law of the case doctrine; (2) excluding that same witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (3) excluding a separate expert witness based upon Insurer's violation of several pre-trial orders. On Insurer's first issue, we affirm without further discussion. As to the trial court's exclusion of Insurer's two expert witnesses, we reverse and remand, as discussed below.

**Background**

Kenrick Grant ("Insured") was involved in a rear-end motor vehicle accident, allegedly sustaining injury. Insured sought treatment from Provider, assigning Provider the right to PIP benefits under his applicable insurance policy. Pursuant to the assignment, Provider requested payment from Insurer, but purportedly did not receive "proper payment." Consequently, Provider filed a one-count complaint against Insurer for breach of contract. In response, Insurer filed an Answer and Affirmative Defenses, asserting that Insured's treatment "was in whole or in part, not reasonable, necessary nor related to the subject accident of this claim."

Over the course of the next ten years, litigation ensued as to whether certain treatment provided by Provider was reasonable,[1] related, and necessary. During that time span, a county court judge twice entered final judgment in Provider's favor, and the Seventeenth Judicial Circuit—in its appellate capacity—twice reversed final judgment based on the trial court erroneously granting summary judgment.

As is relevant for appellate purposes, following the appellate court's second reversal, the appellate court remanded the case back to the trial court because the affidavits of Insurer's two expert witnesses (Dr. Charles (Ted) Bain and Dr. Michael Mathesie) created genuine issues of material fact "on the relatedness and necessity of [Provider's] treatment." It is from the resulting proceedings concerning these experts that Insurer now takes issue.

A. Proceedings Concerning Dr. Bain

Dr. Bain was Insurer's accident reconstructionist and causation expert, who was prepared to testify that Insured "was involved in a very low speed rear-end motor vehicle collision . . . [and] was not subjected to forces or accelerations that would cause injury." Upon remand, the trial court granted Provider's motion for a *Daubert* hearing as to Dr. Bain, holding a two-day *Daubert* hearing thereafter. At the hearing, Dr. Bain—a biomechanical engineer and medical doctor—testified as to his qualifications and the methodology involved in his injury causation analysis.[2]

_____

[1] After the first appeal, Insurer stipulated that the prices charged by Provider were reasonable. Thus, only the relatedness and necessity of certain treatments remained.

[2] In short, Dr. Bain testified that he first sought to "quantify the event." To that end, Dr. Bain attested that he: (1) looked at photographs and the repair estimate of the subject vehicle; (2) purchased bumpers from identical vehicle models involved in the accident; (3) placed said bumpers into a hydraulic press; and (4)

2

After Dr. Bain's testimony, the parties presented their respective arguments as to such testimony's reliability. Provider argued in pertinent part that Dr. Bain's injury causation analysis was "semi-junk science," that Dr. Bain was unfamiliar with several significant variables that would have impacted the force applied to Insured, and that Dr. Bain never physically examined Insured and had an opinion contrary to several other doctors. Ultimately, the trial court concluded the hearing without making an oral ruling.

Roughly two months later, the trial court entered an "Order Granting [Provider's] *Daubert* Challenge . . . ." Within the order, the court found that Insurer had met its "prima facie burden to show that Dr. Bain ha[d] the minimal qualifications needed as an expert biomechanical engineer." However, the court rejected the contents of Dr. Bain's proposed testimony, stating:

> While couched as an opinion on injury causation, Dr. Bain is essentially testifying as to [Insured's] medical condition without ever having examined [Insured] nor relying on any other sufficient data or reliable methodology. This Court is not convinced that Dr. Bain's testimony is based upon reliable principles or methods and is clearly not based on sufficient data, therefore, the Court is not persuaded that Dr. Bain's testimony will, in fact, assist the trier of fact, but would more likely confuse the trier of fact as to [the] cause of [Insured's] injuries in this action.

Insurer moved for reconsideration, arguing that while the court had rejected Dr. Bain's injury causation analysis, the court had not considered

---

pushed the components together to "generate forces and . . . damage greater than what we see on the pictures in the repair estimate." "[U]sing math and physics formulas," Dr. Bain was then able to calculate the speed that the impacting vehicle would have needed to be going to generate the necessary force and damage upon Insured's vehicle. According to Dr. Bain's calculations, this amounted to a rate of speed under 5.2 miles per hour.

With the speed and impact force in mind, Dr. Bain testified that he conducted a biomechanical analysis to determine how Insured would have responded to the forces involved in the accident. At the accident's calculated speed, Dr. Bain attested that the resulting forces would be "very, very low" and would not have caused any structural injury to Insured's spine, neck, or lower back.

3

Dr. Bain's opinion's admissibility as it related to "the impact force and speed of the adverse vehicle involved in the motor vehicle accident." At the ensuing hearing on the motion, the court noted that it had "neglect[ed] to include the other portion of the order" where it also struck Dr. Bain concerning the speed and force of impact. However, the trial court never reduced this ruling to writing in an amended order.

Nevertheless, the court reiterated its finding that Dr. Bain "did not satisfy the *Daubert* standard with respect to showing that . . . [his testimony] was based on reliable principles and methods applied scientifically to the appropriate fashion in this case." In support of this finding, the court specifically stated that it was concerned about the sources used by Dr. Bain in forming his opinion, noting that one of the studies Dr. Bain relied upon "was found not to be really reliable or trustworthy." Although the court was unable to recall exactly which study was unreliable or untrustworthy, it made a general ruling that the basis of Dr. Bain's opinion and "the basis of the studies and the testimony . . . were not sufficient . . . [and] not based upon reliable principles and methods." Consequently, the court struck Dr. Bain as an expert witness.

B. Proceedings Concerning Dr. Mathesie

Dr. Mathesie was Insurer's only other expert witness. He was prepared to testify as to the relatedness and medical necessity of treatment and to "provide opinions as to the nature, duration and extent of [Insured's] injuries." Following the appellate court's second reversal, Provider propounded expert witness interrogatories that included a request for updated information as to both the amount Dr. Mathesie had been paid in the preceding three years and the cases in which he testified.

Over the course of the next five months, Insurer sought several extensions of time to respond to these interrogatories, and at several points provided information as to the amounts paid to Dr. Mathesie in the preceding three years, though in unverified form.

Two months before trial, the trial court held a hearing to address Insurer's incomplete/inadequate response to the interrogatories and Provider's motion for sanctions based on such. The trial court gave Insurer fifteen days to provide compliant responses and awarded Provider $1,000 in sanctions.

Insurer sought reconsideration of the sanctions order and maintained it could not timely comply with the court's order to provide responses to

interrogatories because of Hurricane Irma. Nonetheless, Insurer timely supplied amended *unverified* answers to Provider's expert witness interrogatories, which it then (untimely but prior to trial) supplemented two weeks later in verified form.

In response, Provider filed a motion that contended Insurer had not provided compliant responses as mandated by the court. Further, Provider pointed to a discrepancy in the financial figures provided by Insurer, noting that Insurer's representation as to the amount it paid Dr. Mathesie in 2014 and 2015 differed from the amount Insurer had stated in other cases involving Dr. Mathesie. Accordingly, Provider sought to strike Dr. Mathesie as an expert witness.

At an eve-of-trial hearing on Provider's motion, Insurer represented that the discrepancies in Dr. Mathesie's payment amounts across different cases were not truly inconsistent. Among other explanations, Insurer maintained that "the reason why there's a discrepancy on paper, is because when our office receives these summaries, sometimes, they are not full year-end summaries." Insurer further stated that, although Dr. Mathesie was paid by both State Farm Mutual and State Farm Fire—two different insurance carriers—Insurer had provided Provider only "one number" which did not include figures from State Farm Fire.

Despite whatever inconsistencies may have existed, Insurer stated that the total amount paid to Dr. Mathesie from 2013 through October 17, 2017, was $1,374,467.99. Insurer stated that the $1.3 million figure was "substantial, and . . . significantly enough for [Provider] to conduct what the Court would permit at trial in limited discovery." Insurer represented that it would "give [Provider] the number under oath" and would "sign the affidavit" as to the $1.3 million dollar amount.

The trial court rejected Insurer's response, finding deliberate violations of trial court orders due to Insurer's late responses to Provider's discovery requests and its ultimate provision of "inaccurate information." The court concluded that Provider "suffered absolute prejudice in its ability to prepare to cross-examine the expert witness" and that the "prejudice was curable only by a continuance of the case that has lasted over a decade." The court discussed the factors contained in *Kozel v. Ostendorf*, 629 So. 2d 817, 818 (Fla. 1993), stating that the *Kozel* factors militated toward striking Dr. Mathesie as an expert because Insurer's disobedience was "willful, deliberate and contumacious."

Upon the parties' agreement as to the remaining evidence to be considered, jury trial was waived. Subsequently, the trial court entered a directed verdict and final judgment in Provider's favor. Insurer later moved for rehearing—which the trial court denied—and timely appealed.

## Analysis

"An order on a motion to exclude expert testimony is reviewed for abuse of discretion." *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016). Similarly, "[a] trial court's decision to impose sanctions for discovery violations" is reviewed for an abuse of discretion. *See Griefer v. DiPietro*, 708 So. 2d 666, 670 (Fla. 4th DCA 1998).

### A. *Daubert* Issue and Exclusion of Dr. Bain

"Under *Daubert*, a trial judge has a gatekeeping role to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Kemp v. State*, 280 So. 3d 81, 88 (Fla. 4th DCA 2019) (quoting *Daubert*, 509 U.S. at 589). For proper appellate review purposes, a natural requirement of the trial court's gatekeeping function "is the creation of 'a sufficiently developed record in order to allow a determination of whether the [trial] court applied the relevant law.'" *Goebel Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)).

A trial court must "make specific factual findings on the record which are sufficient for an appellate court to review the trial court's conclusion concerning whether the testimony was scientifically reliable and factually relevant." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005); *see also United States v. Lee*, 25 F.3d 997, 999 (11th Cir. 1994) ("We encourage [trial] courts to make specific fact findings concerning their application of . . . *Daubert* in each case where the question arises, because such findings will facilitate this Court's appellate review.") In the absence of such necessary findings, appellate courts "are not well-suited to exercising the discretion reserved to [trial] courts" in *Daubert* proceedings. *Goebel*, 215 F.3d at 1088–89.

In *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947 (6th Cir. 2002), after the plaintiff's expert witness submitted two reports outlining his intended trial testimony and provided deposition testimony, the defendant sought the expert witness's exclusion under *Daubert*. *Id.* at 960. The trial court granted the motion, ruling as follows:

6

> Performing its 'gatekeeping' function under *Daubert*, the Court finds that [the expert's] reports and his anticipated testimony do not rest on a reliable foundation. It further finds that the underlying reasoning and methodology is not sound or valid to the task addressed and that his conclusions are therefore speculative to the point of inadmissibility.

*Id.* Beyond this ruling, however, the trial court did not "make any specific factual findings explaining [its] conclusion." *Id.*

On appeal, the Sixth Circuit stated that the trial court's decision was "a mere recitation of the standard to be applied to determining the admissibility of expert testimony" and provided "no insight into the analysis supporting the trial court's determination." *Id.* at 961. The court therefore found that the trial court had abused its discretion, and, as the trial court had not previously held a *Daubert* hearing, the Sixth Circuit directed the trial court to conduct such a hearing to develop an adequate record and fulfill its gatekeeping responsibility. *Id.* at 961; *see also Cristin v. Everglades Correctional Institution*, 310 So. 3d 951, 957 (Fla. 1st DCA 2020) (holding that once a *Daubert* objection was raised, the factfinder "had the responsibility to perform the necessary analysis, *make relevant supporting findings of fact*, and issue a ruling") (emphasis added)).

Here, the trial court's oral and written rulings concerning Dr. Bain's exclusion were conclusory in nature. As in *Busch*, the court merely tracked the language of the relevant *Daubert* statute, section 90.702, Florida Statutes. The only specific factual findings the trial court made were that Dr. Bain was "essentially testifying as to [Insured's] medical condition without ever having examined [Insured]" and that Dr. Bain relied upon a study that "was found not to be really reliable or trustworthy."

As to the former, the law is clear that an expert need not physically examine an insured in an action for PIP benefits. *See United Auto. Ins. Co. v. Millennium Diag. Imaging Ctr., Inc.,* 12 So. 3d 242, 246 (Fla. 3d DCA 2009). As to the latter, upon a thorough review of the record, we are unable to locate discussion of any study at the *Daubert* hearing that "was found not to be really reliable or trustworthy." While Dr. Bain cited to a study prepared by two Japanese researchers that involved "using a sled that does not accurately replicate a rear-end collision, but . . . comes close," the record provides no indication that the study itself was determined to be unreliable or untrustworthy. Moreover, while Dr. Bain was cross examined concerning a citation to a paper that he himself had

7

co-authored, there was no indication that the underlying information was "not . . . reliable or trustworthy."

This was not a situation in which there was no *Daubert* hearing. Nonetheless, the instant case's lack of factual findings beyond the mere conclusory findings that Dr. Bain's testimony was unreliable—combined with the inadequacy of the only two stated factual findings in support— leaves us to conclude the trial court abused its discretion in failing to meet its gatekeeping responsibility to make adequate factual findings, necessitating reversal and remand.

## B. <u>Violation of Pre-Trial Orders and Dr. Mathesie's Exclusion</u>

"Information regarding the frequency of an expert's testimony and the corresponding payments to the expert is discoverable from the defendant insurer in a personal injury action." *Allstate Ins. Co. v. Hodges*, 855 So. 2d 636, 640 (Fla. 2d DCA 2003). This information may be requested via written interrogatories and is "directly relevant to a party's efforts to demonstrate to the jury a witness's bias." *Allstate Ins. Co. v. Boecher*, 733 So. 2d 993, 997 (Fla. 1999); *see* Fla. R. Civ. P. 1.340(b). In the event a party fails to comply with discovery requests, the requesting party may apply for an order compelling discovery. Fla. R. Civ. P. 1.380(a)(2). If the court then compels discovery and the party still does not comply, the court has the inherent authority to enter sanctions, including "prohibiting that party from introducing designated matters in[to] evidence." Fla. R. Civ. P. 1.380(b)(2)(B).

"Although the exclusion of a witness's testimony is a permissible sanction for a discovery violation under Florida Rule of Civil Procedure 1.380(b)(2), it is a drastic remedy which should be utilized *only under the most compelling circumstances*." *Griefer*, 708 So. 2d at 670 (emphasis added). This is because "[t]he right to call witnesses is one of the most important due process rights of a party." *Pascual v. Dozier*, 771 So. 2d 552, 554 (Fla. 3d DCA 2000). Indeed, absent evidence of a party's "willful failure to comply or extensive prejudice to the opposition," the exclusion of testimony constitutes an abuse of discretion. *Scott v. Reflections of Sebastian, LLC*, 133 So. 3d 1046, 1048 (Fla. 4th DCA 2014) (quoting *Kamhi v. Waterview Towers Condo. Ass'n*, 793 So. 2d 1033, 1036 (Fla. 4th DCA 2001)).

Further, "it is critical for the trial court to exercise extreme caution when excluding a party's only witness" or a party's most important witness. *Keller Indus. v. Volk*, 657 So. 2d 1200, 1203 (Fla. 4th DCA 1995).

8

"[A] litigant should not be punished for fault on the part of [its] counsel by such a severe sanction as striking [its] witnesses for non-compliance." *Taylor v. Mazda Motor of Am., Inc.*, 934 So. 2d 518, 521 (Fla. 3d DCA 2005). Simply stated, a trial court's "sanction must be commensurate with the offense." *Id.*

In the instant case, there was neither a showing of a willful failure to comply, nor a demonstration of extensive prejudice to the opposition. *Scott*, 133 So. 3d at 1048. Certainly, Insurer's actions in filing unverified answers (and in filing inconsistent financial figures) are not to be commended. However, the record before us does not demonstrate an "absolute refusal . . . to furnish the requested information." *See Surf Tech Int'l, Inc. v. Rutter*, 785 So. 2d 1280, 1282–83 (Fla. 5th DCA 2001). Nor does the record demonstrate a contumacious disregard of the court's authority, as, right up until the court struck Dr. Mathesie, Insurer was attempting to comply with the court's directives.

With respect to prejudice, we find it notable that each time Insurer filed its unverified responses, those responses were identical to the later-filed verified responses. *See Burton v. GOV Contracting Corp.*, 552 So. 2d 293, 295–96 (Fla. 2d DCA 1989) (in some circumstances, an unsigned document does not prejudice the other party when the sworn document is identical). We further find it significant that Insurer was willing to stipulate to a $1.3 million payment amount provided to Dr. Mathesie from 2013 through October 17, 2017, despite whatever discrepancies may have existed in the information provided on the eve of trial.

Ultimately, the trial court struck Dr. Mathesie because of the case's age, despite acknowledging that prejudice to Provider was curable by a continuance. While we understand the trial court's reasoning, striking Insurer's last remaining expert witness was not an appropriate sanction, as it was not commensurate with the offense. Consequently, we hold the trial court abused its discretion in excluding Dr. Mathesie.

## Conclusion

We reverse and remand for new trial consistent with this opinion.

*Reversed and remanded.*

MAY and LEVINE, JJ., concur.

\* \* \*

9

*Not final until disposition of timely filed motion for rehearing.*