DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**YANEIRA E. APONTE,**
Appellant,

v.

**WAL-MART STORES EAST, LP,**
Appellee.

No. 4D2023-2417

[July 9, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Carney Croom, Judge; L.T. Case No. 312020CA000638.

Chad A. Barr of Chad Barr Law, Altamonte Springs, for appellant.

Jack R. Reiter and Eric Yesner of GrayRobinson, P.A., Miami, for appellee.

FORST, J.

Both Yaneira E. Aponte ("Plaintiff") and Wal-Mart Stores East, LP ("Defendant") agreed that Defendant's negligence in failing to maintain its Garden Center premises was at least partially responsible for Plaintiff's slip and fall. The parties disagreed as to the amount of monetary damages (including future damages) that were attributable to Defendant's negligence. Following a jury trial, Plaintiff was awarded $22,500, far below her asserted damages. The trial court denied Plaintiff's motion for a new trial.

On appeal, Plaintiff argues that the trial court's exclusion of key medical testimony and issuance of directed verdicts on substantial portions of Plaintiff's damages claims improperly restricted the evidence available for the jury's consideration and distorted the jury's assessment of damages. As discussed below, we agree with Plaintiff that the trial court erred in limiting Plaintiff's evidence and argument, necessitating reversal and remand for a new trial.

**Background**

In 2019, Plaintiff slipped and fell on algae buildup on Defendant's garden center floor. Plaintiff maintained that the incident caused injuries to her left wrist, left knee, and lower back. She ultimately sued Defendant for negligence, seeking damages for loss of future earning capacity, and past, present, and future medical expenses. Defendant conceded it was negligent in maintaining the premises, but claimed Plaintiff was comparatively negligent and was the legal cause of her injuries, leaving the jury to decide the extent of Defendant's liability and damages.

## A. Limiting Plaintiff's Treating Orthopedic Doctor's Testimony Based on a *Binger* Violation

Plaintiff's treating orthopedic doctor ("Orthopedist") was a central witness intended to testify on the causation, permanency, and projected cost of Plaintiff's future medical treatment, including potential cartilage transplant ("MACI") surgery and eventual knee replacement. Plaintiff timely disclosed Orthopedist as both a fact witness and expert on May 12 and 16, 2023, respectively. Plaintiff's May 16 disclosure indicated that Orthopedist *had already examined* Plaintiff and Orthopedist was "expected to testify as to the cause of Plaintiff's injuries, treatments, diagnosis and prognosis as well as the reasonableness and necessity of care and treatment in the past and future, as well as the issue of causation and permanency of the injuries." However, Orthopedist did not see Plaintiff for the first time until May 23, 2023.

Plaintiff submitted the report from the May 23 exam in late July. The report explained that Orthopedist was not recommending surgery at that time and that he had "advised [Plaintiff] that most patients with internal knee derangement can achieve some measure of pain relief from nonsurgical options like NSAIDs, lifestyle modification, exercise and physical therapy, and use of supportive devices or change in footwear."

Orthopedist examined Plaintiff for a second time on August 15, 2023, the week before trial. No report from that visit was submitted. However, Orthopedist's deposition was taken on August 16, 2023. During that deposition, he stated that Plaintiff's knee injury was permanent and reasonably certain to require future treatment because her "biomechanics will never be the same." He added that he was reasonably certain Plaintiff would need a cartilage transplant in the future and would continue to deal with various issues related to her knee throughout her life, ultimately necessitating a knee replacement. Orthopedist estimated the cartilage transplant would cost at least $75,000. He based his assessment of Plaintiff on his May and August exams, previous MRI scans and X-rays, a review of treatment records prepared by other physicians, and viewing a

2

surveillance video of Plaintiff walking around the garden center before her fall.

On the first day of the trial, Defendant moved to strike Orthopedist's testimony. Defendant argued it was surprised by Orthopedist's deposition testimony because he did not form his opinions until after he had examined Plaintiff the second time, did not provide a medical record of the second visit, his testimony was outside the realm of a treating physician, and he was unable to state with certainty that Plaintiff would have surgery.

The trial court granted Defendant's motion in part, excluding any testimony from Orthopedist as to Plaintiff's need for future treatment and the anticipated cost of treatment. In reaching this ruling, the trial court found:

- Plaintiff's counsel initially misrepresented, on May 16, that Plaintiff had been examined by Orthopedist. "[A]t the very least [this was] factually inaccurate, and it was known by Plaintiff's counsel to be factually inaccurate at the time Plaintiff's counsel filed the document."

- Defendant relied on the report prepared following Orthopedist's May 23 exam. That report was submitted on July 26 and did not include any recommendation for future surgery.

- "Defendant could not have been on notice that this doctor was acting as, number one a hybrid; number two, was acting in any way outside of his treating physician capacity, and number three, certainly was not going to testify or offer an opinion with regard to future care in the manner that ha[d] been suggested."

- Plaintiff violated *Binger v. King Pest Control*, 401 So. 2d 1310 (Fla. 1981), and that any post-July 26 analysis by Orthopedist "would be a new opinion, clearly resulting in surprise and prejudice to the opposing counsel."

- Orthopedist's deposition testimony concerning Plaintiff's future care and treatment was "based largely on his review of medical records from other treating physicians, which impermissibly crosse[d] the line into expert testimony."

- "Orthopedist cannot be used as a conduit for expert testimony by providing him with medical records of other listed treating physicians to form his treating physician opinion as to causation and the necessity of future care and treatment."

3

Accordingly, the trial court limited Orthopedist's testimony to his May 23 examination of Plaintiff, thus granting Defendant's motion to strike in part.

## B. Granting Defendant's Motions for Directed Verdicts

At trial, Plaintiff called Orthopedist and a diagnostic radiologist, who conducted Plaintiff's MRIs, to testify that the fall at Defendant's store was the cause of Plaintiff's knee pain and her two pre-trial knee surgeries. Defendant moved for directed verdicts on Plaintiff's claims for damages related to her two prior knee surgeries and for future pain and suffering as to her knee, arguing that no competent medical evidence linked the surgeries or future suffering to the fall. The trial court granted these motions, concluding that Plaintiff had not offered sufficient expert testimony to support either claim.

The jury awarded $30,000 in past non-economic damages, reduced by 25% for comparative fault, resulting in a net award of $22,500. Plaintiff's motion for new trial was denied. This appeal followed.

## Analysis

## A. The Trial Court Misapplied *Binger* and Erroneously Excluded Orthopedist's Testimony

"We review evidentiary rulings for abuse of discretion." *Liukkonen v. Bayview Loan Servicing, LLC*, 243 So. 3d 981, 982 (Fla. 4th DCA 2018).

Plaintiff argues she is entitled to a new trial because the trial court erred when it excluded Orthopedist's testimony regarding Plaintiff's future expenses and future pain and suffering. Plaintiff further contends the trial court erred because Plaintiff had timely disclosed Orthopedist as a witness and the trial court applied the incorrect standard for the admissibility of testimony pertaining to Plaintiff's claim for future expenses. Finally, Plaintiff asserts that because Orthopedist was Plaintiff's only witness regarding future expenses, the trial court's limitation on Orthopedist's testimony amounted to an extreme sanction.

We agree with Plaintiff—the trial court erred in concluding that *Binger* applied and in excluding Orthopedist's testimony. *Binger*'s purpose is to prevent trial by ambush, not to punish parties for timely disclosing witnesses who offer opinions developed through continued treatment. A treating physician may offer opinions based on treatment rendered and on review of relevant records. *See Gutierrez v. Vargas*, 239 So. 3d 615, 622

4

(Fla. 2018). Contrary to the trial court's finding, Orthopedist did not change his opinion, but instead formed it based on his May and August 2023 examinations, as well as his review of Plaintiff's prior treatment, all of which is standard practice. Moreover, Orthopedist's observations and recommendations were disclosed to Defendant pre-trial, limiting the possibility of "surprise and substantial prejudice" to Defendant. *See Cooper v. Gonzalez*, 374 So. 3d 841, 843–44 (Fla. 5th DCA 2023).

An expert's opinion is substantially changed when it reverses from an earlier opinion. *See Allstate Prop. & Cas. Ins. Co. v. Lewis*, 14 So. 3d 1230, 1235 (Fla. 1st DCA 2009). In determining "whether to exclude or limit such untimely disclosed testimony, the trial court is to consider: (1) the opponent's ability to cure the prejudice, (2) whether the proponent's noncompliance with the pretrial order was in bad faith, (3) whether the trial would be disrupted, and (4) any other relevant factor." *Cooper*, 374 So. 3d at 844; *see also Gurin Gold, LLC v. Dixon*, 277 So. 3d 600, 601 (Fla. 4th DCA 2019) (reversing a judgment where a treating physician's trial testimony was based on an MRI he had never previously reviewed or relied upon).

Here, Orthopedist explained that he had reviewed treatment options with Plaintiff during the May examination and noted that his subsequent report had not ruled out a future surgery recommendation. Three months later, after determining Plaintiff's knee pain had not diminished, Orthopedist specifically discussed surgical options with Plaintiff. Whether a "substantial reversal of opinion" had occurred is arguable. *Office Depot, Inc. v. Miller,* 584 So. 2d 587, 590–91 (Fla. 4th DCA 1991).

Further, Defendant's prejudice claim is unsubstantiated. Orthopedist was timely disclosed on May 16, 2023, and his role as a hybrid witness on causation and damages was specifically described. Defendant waited until five days before trial to depose him. As such, any last-minute "surprise" was self-inflicted. *See White v. Ring Power Corp.*, 261 So. 3d 689, 700 (Fla. 3d DCA 2018) (noting *Binger* did not apply to exclude a defense witness's testimony because the plaintiff was given an opportunity to further interview the witness, could have deposed the witness, and could have cured any prejudice by requesting a continuance of the trial). "[A]bsent evidence of a party's 'willful failure to comply or extensive prejudice to the opposition,' the exclusion of testimony constitutes an abuse of discretion." *State Farm Mut. Auto. Ins. Co. v. Nob Hill Fam. Chiropractic*, 328 So. 3d 1, 7 (Fla. 4th DCA 2021) (quoting *Scott v. Reflections of Sebastian, LLC*, 133 So. 3d 1046, 1048 (Fla. 4th DCA 2014)). No such evidence exists here.

Exclusion of a party's sole witness on a major component of damages—in this case, future medical care—is an extreme sanction. Florida courts

have uniformly cautioned that trial courts must exercise "extreme caution when excluding a party's only witness." *Keller Indus. v. Volk*, 657 So. 2d 1200, 1203 (Fla. 4th DCA 1995). "The right to call witnesses is one of the most important due process rights of a party; accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done." *Dos Santos v. Carlson*, 806 So. 2d 539, 541 (Fla. 3d DCA 2002) (quoting *Pascual v. Dozier*, 771 So. 2d 552, 554 (Fla. 3d DCA 2000)). The trial court "should exercise caution when the witness sought to be excluded is a party's only witness or one of the party's most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support his or her theory of the case." *HSBC Bank Mortg. Corp. (USA) v. Lees*, 201 So. 3d 699, 702–03 (Fla. 4th DCA 2016) (quoting *id.*).

In the instant case, Orthopedist's testimony was pivotal to Plaintiff's request for damages attributable to future surgical procedures and future pain and suffering. As emphasized in *Griefer v. DiPietro*, 708 So. 2d 666 (Fla. 4th DCA 1998), exclusion of key medical testimony can warrant reversal when the expert was timely disclosed and the opposing party had opportunity to prepare. *Id.* at 671. Here, Defendant was not deprived of that opportunity, nor did Defendant show Plaintiff had acted in bad faith. The exclusion of Orthopedist's testimony of observations and diagnoses reached subsequent to his May examination, despite being disclosed to Defendant at his deposition five days before trial, materially prejudiced Plaintiff's ability to prove a central element of damages and was therefore reversible error.

## B. The Trial Court Applied an Improper Legal Standard to the Future Medical Expenses Testimony

The trial court's *Binger* error was compounded by its misapplication of the standard for admissibility of testimony regarding future medical expenses. The court excluded this evidence on grounds that Orthopedic could not state with certainty that Plaintiff would undergo the recommended treatments.

This is not the correct legal standard. Future medical expenses are recoverable when they are "reasonably certain" to be incurred. *Auto-Owners Ins. Co. v. Tompkins*, 651 So. 2d 89, 90 (Fla. 1995). Courts do not require absolute certainty regarding whether a patient will pursue treatment, only that the need for such treatment is medically probable. *See id.* at 90–91. Treating physicians are allowed to testify as to the likelihood of future care based on a reasonable degree of medical probability, even if the patient has not yet committed to undergoing the

procedure.  *Greenberg v. Schindler Elevator Corp.*, 47 So. 3d 901, 904 (Fla. 3d DCA 2010).

Here, Orthopedist testified within a reasonable degree of medical certainty that Plaintiff would need future care, including the MACI procedure, osteotomies, and injections, and provided cost estimates based on clinical experience.  The trial court's rejection of that testimony based on Plaintiff's undecided treatment plan imposed a stricter evidentiary burden than the law requires.

### C  The Trial Court Erred in Granting Directed Verdicts concerning Prior Surgeries and Future Pain and Suffering

We review "a trial court's ruling on a motion for directed verdict de novo, viewing the evidence and all inferences in a light most favorable to the non-movant."  *Seven Restaurants, LLC v. Tulecki*, 391 So. 3d 949, 959 (Fla. 4th DCA 2024).  "Motions for directed verdict are rarely appropriate in negligence cases."  *MasTec N. Am., Inc. v. Morakis*, 288 So. 3d 685, 688 (Fla. 4th DCA 2019) (quoting *Howell v. Winkle*, 866 So. 2d 192, 195 (Fla. 1st DCA 2004)).  "A motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party."  *Publix Super Markets, Inc. v. Safonte*, 388 So. 3d 32, 35 (Fla. 4th DCA 2024) (quoting *Village of Tequesta v. Luscavich*, 240 So. 3d 733, 738 (Fla. 4th DCA 2018)).  "[A] directed verdict . . . is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation."  *Cox v. St. Josephs Hosp.*, 71 So. 3d 795, 801 (Fla. 2011).

The trial court erred in granting directed verdicts against Plaintiff on her claims for damages from two prior surgeries and future pain and suffering.  Directed verdicts are reserved for cases where no view of the evidence could support the non-moving party's claim.  *See Philip Morris USA Inc. v. Santoro*, 298 So. 3d 630, 634 (Fla. 4th DCA 2020).

Here, Plaintiff's expert diagnostic radiologist linked the fall to Plaintiff's knee injuries and resulting surgeries with a reasonable degree of medical certainty.  His opinions were corroborated by operative notes, imaging studies, and Plaintiff's testimony regarding her post-fall physical condition.  In light of this testimony, questions of causation, necessity, and damages should have been submitted to the jury.

As to future pain and suffering, Plaintiff presented uncontroverted testimony about her enduring symptoms, physical limitations, and emotional distress, which Orthopedist confirmed were consistent with ongoing degenerative knee pathology.  Florida law supports submission of

such claims to the jury when supported by medical and lay testimony. *See Walerowicz v. Armand-Hosang,* 248 So. 3d 140, 145 (Fla. 4th DCA 2018).

In granting directed verdicts on these claims, the trial court improperly invaded the jury's role and deprived Plaintiff of the opportunity to present a complete damages case. These rulings further compounded the prejudice caused by the limitations on Orthopedist's testimony and warrant reversal.

## Conclusion

For the reasons stated above, the trial court's exclusion of Orthopedist's testimony based on an erroneous application of *Binger* and incorrect evidentiary standards, as well as its granting of directed verdicts on essential damages claims, constituted reversible error. Therefore, we reverse the final judgment and remand for a new trial.

*Reversed and remanded for a new trial.*

WARNER and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***